808 A.2d 128 (2002)
354 N.J. Super. 467
Victor HERNANDEZ, Plaintiff-Appellant,
v.
MONTVILLE TOWNSHIP BOARD OF EDUCATION, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued October 1, 2002.
Decided October 24, 2002.
*130 David A. Amadio argued the cause for appellant.
Raymond W. Fisher, Forham Park, argued the cause for respondent (Schwartz Simon Edelstein Celso & Kessler, attorneys; Stephen J. Edelstein, of counsel; Mr. Fisher and Christopher R. Welgos, on the brief).
Before Judges WALLACE, JR., CIANCIA and AXELRAD.
*129 The opinion of the court was delivered by AXELRAD, J.T.C. (temporarily assigned).
Plaintiff, Victor Hernandez, a night custodian for defendant, Montville Township Board of Education, appeals from the grant of defendant's motion for a judgment notwithstanding the verdict (JNOV) on plaintiff's Conscientious Employee Protection Act (CEPA) claim. The jury had returned a verdict in plaintiff's favor for $44,000 for wage loss and $150,000 for emotional distress.
On appeal, plaintiff contends: (1) the trial court erred in granting defendant's motion; (2) it was error to fail to submit the punitive damages issue to the jury; and (3) if we reverse, the trial court should consider his application for interest, attorney's fees and costs. We agree and reverse the JNOV, reinstate the jury award, and remand for a trial on punitive damages, interest, attorney's fees and costs.
For twenty years prior to his employment with defendant, plaintiff was employed by Consolidated Edison (Con Ed) as a custodian and later as a mechanic. At Con Ed he attended seminars addressing OSHA[1] laws, and was trained to identify and report safety hazards within the company. In April 1996, he was hired by defendant as a part-time maintenance employee while he also maintained his position at Con Ed. In January 1997, following plaintiff's successful completion of a thirty-day trial period, defendant approved plaintiff's appointment as a full-time night custodian for two of defendant's elementary schools, William Mason and Cedar Hill. The employment contract covered the period from December 2, 1996, through June 30, 1997.
Defendant also required plaintiff to attend health and safety meetings. At one meeting, a safety representative indicated that the cleanliness of the bathrooms was regulated by OSHA, which mandated a sanitary environment. Plaintiff was also provided with a staff handbook which emphasized the importance of safety at the schools and directed a custodian to assume responsibility for the general safety of the building.
Plaintiff first noticed a safety issue at the school in December 1996, which he reported to the principal Dr. Stephanie Adams and the facilities manager Leon Vandeneulebroeke.[2] In February and *131 March 1997, plaintiff also observed and either reported or attempted to discuss with the superintendent Dr. Richard Bozza and business administrator Dominic Butler other safety and sanitary concerns. Specifically, plaintiff was concerned with broken toilets that were clogged and overflowing for prolonged periods of time, causing feces and urine to spill out on the floor, and an exit sign that was unlit for seven days due to a burned out bulb. Thereafter, plaintiff was criticized in a series of memos for the first time for poor work performance, engaging in lengthy personal phone calls while on duty, not arriving on time, theft of services, and not following the chain of command. On March 6, 1997, he was suspended from his position and on March 18, 1997, he was terminated.
On February 6, 1998, plaintiff filed suit against defendant alleging he was terminated in violation of CEPA, N.J.S.A. 34:19-1 to -8. Plaintiff and his wife Deborah, who was also employed by defendant as a custodian, testified at trial as to the nature of plaintiff's complaints and their attempts to bring them to the attention of defendant's representatives. Plaintiff also testified about medical and emotional problems he experienced for about three to four months following his termination, including being upset, crying often, having difficulty sleeping, having diarrhea and losing weight, and about the depression he experienced in March 1999. The court reserved decision on defendant's motion for dismissal under Rule 4:37-2(b).
Defendant presented the testimony of Vandeneulebroeke, Bozza, Adams, Butler, and another custodian Mike Foschini. The court thereafter denied defendant's motion for judgment at the close of all evidence. In addition, the court ruled that only the issues of the exit sign being unlit for seven days and the clogged and overflowing toilets would be submitted to the jury. After being charged under N.J.S.A. 34:19-3a, the jury returned a verdict favorable to plaintiff. The court denied plaintiff's request to send the issue of punitive damages to the jury, concluding the facts did not support the imposition of such damages.
Thereafter, defendant moved for JNOV, for a new trial, or for remittitur. On September 14, 2001, the court granted defendant's motion for a JNOV, stating:
Talk about trivial. This is a caseand I never should have let it go to the jury, I should have read now the McLelland case ... I should have made a determination right at that time, before the trial even started, but I didn't because I didn't know what the facts were. But certainly by the time the jury went out, I should have concluded that the plaintiff simply had not made out a case, under the CEPA law, because he never disclosed or threatened to disclose to his supervisor an activity, policy, practice of an employer that the employee reasonably believed was in violation of law or a rule or regulation promulgated pursuant to the law. There simply was none. There were trivial things that he didn't like. The toilets he said were for days clogged up, and one light-one light, for ashort period of time, an exit light, didn't have the lightthe bulb working. And it turns out whose job is it to change the bulb, his. His job. And then he falls back and says well, I couldn't get a bulb.
I have never seen anything like it. And that's supposed to support a CEPA claim? And he, himself, admitted that he never explained to anyone what it was exactly that he was complaining about. Hehe sayshe simply said he *132 wanted a meeting about some issues, safety issues or whatever they were, without specifying what they were.
But in addition to that, there isn't any other evidence adduced by anyone in the case that these things that he's complaining about ever occurred, except for the most trivial thing about this light bulb that wasn't out.
I didn't believe anything [plaintiff] said, but that isn't the test here. The test is whether a reasonable jury could have concluded, number one, that there was aaa violation of some law, regulation or even public policy. If there's a public policy involved here about clogged toilets, it is trivialization beyond belief.
The order which is the subject of this appeal was entered on September 20, 2001.
The key issue on appeal is whether plaintiff performed whistleblowing activity by reporting the unsanitary conditions of the bathroom and the broken light in the fire exit sign and was terminated as a result. Accepting as true the evidence supporting plaintiff's position and according him the benefit of all legitimate inferences which can reasonably and legitimately be deduced therefrom, Dolson v. Anastasia, 55 N.J. 2, 5-6, 258 A.2d 706 (1969), we find the verdict is sustainable and it was error for the trial court to grant JNOV. R. 4:40-2.
The CEPA statute, N.J.S.A. 34:19-3a, provides:
An employer shall not take any retaliatory action against an employee because the employee does any of the following:
a. Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer... that the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law ...
New Jersey's CEPA statute has been described as the most far reaching "whistleblowing statute" in the nation. Mehlman v. Mobil Oil Corp., 153 N.J. 163, 179, 707 A.2d 1000 (1998). CEPA was designed to provide broad protections against employer retaliation for employees acting within the public interest and, as remedial legislation, it should be construed liberally to effectuate its important social goal. Abbamont v. Piscataway Township Bd. Of Educ., 138 N.J. 405, 418, 650 A.2d 958 (1994); Dzwonar v. McDevitt, 348 N.J.Super. 164, 791 A.2d 1020 (App.Div.), certif. granted in part, 172 N.J. 180, 796 A.2d 897 (2002).
In order to maintain a cause of action under this statute, a plaintiff must establish that: (1) he or she reasonably believed that his or her employer's conduct was violating either a law or rule or regulation promulgated pursuant to law; (2) he or she performed whistleblowing activity described in N.J.S.A. 34:19-3a, c(1) or c(2);[3] (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistleblowing activity and the adverse employment action. Kolb v. Burns, 320 N.J.Super. 467, 476, 727 A.2d 525 (App. Div.1999).
*133 Plaintiff established he reasonably believed the unsanitary bathroom conditions and unlit exit sign at the elementary school violated health and safety rules and regulations and were contrary to a clear mandate of public policy. See, e.g., Abbamont, supra, 138 N.J. at 410, 650 A.2d 958 (permitting a CEPA claim by a teacher who expressed his concerns about poor health and safety conditions in the school's metal shop, including broken machines, lack of air ventilation, inadequate lighting, and slippery floors).
Plaintiff, a custodian for over twenty years who received continual safety training and was informed about OSHA, knew there were regulations and policies against exposing schoolchildren to urine and feces and against unlit exit signs, particularly in an elementary school setting. Plaintiff was informed by defendant's safety representative that OSHA's general standards require washing facilities to be maintained in a sanitary condition. Vandenuelebroeke conceded that an unlit exit sign is a fire violation. Moreover, the staff handbook provided to plaintiff stressed the importance of safety, and that it was his job to maintain the general safety of the school buildings.
Contrary to the court's finding in granting JNOV, it is irrelevant to plaintiff's CEPA claim whether there was independent corroboration of the overflowing toilets. As previously stated, under the JNOV standard the court must accept as true plaintiff's testimony, which the jury clearly found credible. Dolson, supra, 55 N.J. at 5-6, 258 A.2d 706. Moreover, Vandeneulebroeke acknowledged that on more than one occasion if parts were not in stock it took a week to repair a toilet.
Giving plaintiff the benefit of all favorable inferences, there was ample credible evidence to support the jury's conclusion that plaintiff made his superiors aware of the problems even if he did not always articulate the exact violation. Plaintiff testified he told principal Adams the exit light was out, which she denied, and pursuant to her direction he took the bulb out the next day in Vandeneulebroeke's presence, handed it to him and was told "I'll see you tomorrow." According to plaintiff, during the seven days it took for the facilities manager to bring him a replacement bulb, plaintiff consistently asked for the bulb and gave the principal a note indicating an unlit exit sign is a fire code violation.
Plaintiff further testified he told Vandeneulebroeke and the schools' principals about the malfunctioning toilets, often several times a day, and when he requested a plunger he was advised it was maintenance's job to repair the toilets, not the custodian's. Vandenuelebroeke acknowledged receiving the call.
Becoming frustrated with maintenance's lack of response, in late January or early February 1997, plaintiff approached superintendent Bozza and asked if they could discuss "health hazard conditions and maintenance lack of service in the building." Pursuant to Bozza's instructions, plaintiff called his office the next day to schedule a meeting and despite plaintiff's subsequent efforts to contact him, Bozza never returned plaintiff's phone calls. At trial, Bozza acknowledged that plaintiff had approached him near the end of January but insisted that plaintiff did not mention any violations and only talked about having some ideas for the school system generally.
Thereafter, plaintiff scheduled a meeting with business administrator Butler for March 4, 1997 although he did not inform him of the purpose. Butler, however, canceled the meeting and never rescheduled it.
*134 According to Deborah Hernandez, she advised Bozza's secretary, Marie Cetrulo, that plaintiff had concerns over the toilets and thereafter told Bozza her husband's concerns about the "toilets [being] extremely dirty [and] they smell" and that "there were no lights on the exit sign light." Bozza denied this conversation. She further testified she left a note for Vandeneulebroeke and two notes on Butler's desk stating that her husband had informed her that there were safety and sanitary issues at the schools and requesting that a meeting be scheduled, but neither person responded. At trial Vandeneulebroeke and Butler denied having received notes.
Until plaintiff began complaining, he had a good work record. Vandeneulebroeke admitted he had no problems with plaintiff's performance during plaintiff's probationary period or throughout January 1997, and acknowledged that plaintiff was the only custodian he ever recommended for termination after the conclusion of the probationary period. Bozza admitted he did not receive any complaints about plaintiff from April 1996 through January 1997, although Adams testified she began having problems with plaintiff thereafter. Plaintiff testified that following his encounter with Bozza in which he mentioned "health hazard conditions and maintenance lack of service in the building," his wife's talk with Bozza regarding plaintiff's concerns about the toilets and exit sign light, and his scheduling of a meeting with Butler, he began to receive memos about his poor performance and was terminated shortly thereafter in retaliation. There was ample evidence in the record for the jury to conclude defendant's proffered reason for termination was a pretext and that the whistleblowing itself was a substantial factor in the termination. See Estate of Roach v. TRW, Inc., 164 N.J. 598, 612, 754 A.2d 544 (2000) and Donofry v. Autotote Sys., 350 N.J.Super. 276, 293, 795 A.2d 260 (App.Div.2001). Thus, this was not a "runaway jury" as categorized by the court. Accordingly, it was error for the court to substitute its judgment for that of the jury and reverse the jury verdict.
Furthermore, the punitive damage claim should have been submitted to the jury. Plaintiff claims that Bozza, Butler, Adams and Vandeneulebroeke all lied in their testimony. He further testified that Foschini, the other janitor, warned him "to keep [his] mouth shut" because if he said anything about unsafe conditions and health hazards, he would get fired. Based upon the compensatory damage verdict, it appears that the jury agreed. Our Supreme Court in Abbamont, supra, 138 N.J. at 432, 650 A.2d 958, made it clear that "punitive damages, which are available under CEPA against public entities, should be determined by a jury as the trier of fact." The court stated:
Because punitive damages are part of common-law tort claims ... the remedy of punitive damages herein should be decided by a jury, as it is in common law tort actions. There is no reason to remove this issue from the jury. The court's role in that setting is limited: [d]ue to the universal recognition of the broad discretion by a jury to determine whether to give or withhold punitive damages and, when awarded, to determine the amount to be awarded, only one area of judicial control of the exercise of jury discretion has been recognized. That area of control is over excessive punitive damage awards.
[Id. at 433, 650 A.2d 958.]
Because plaintiff presented sufficient evidence to sustain the jury verdict, we reverse the trial court's grant of a JNOV and reinstate the verdict on compensatory *135 damages. We remand for a new trial on punitive damages and consideration of interest, attorney's fees and costs.
NOTES
[1] Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 et seq.
[2] The trial court's ruling that the jury could not consider evidence of alleged problems other than the exit sign and bathrooms is not challenged on appeal. Accordingly, we will not discuss testimony other than that relating to the exit sign and bathrooms.
[3] N.J.S.A. 34:19-3c provides as follows:

An employer shall not take any retaliatory action against an employee because the employees does any of the following:
c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:
(1) is in violation of a law, or a rule or regulation promulgated pursuant to law...; or
(2) is fraudulent or criminal.