843 A.2d 1091

VICTOR HERNANDEZ, PLAINTIFF–RESPONDENT, v. MONTVILLE TOWNSHIP BOARD OF EDUCATION, DEFENDANT–APPELLANT.

Argued October 7, 2003—Decided March 23, 2004.

*Stephen J. Edelstein,* argued the cause for appellant (*Schwartz Simon Edelstein Celso & Kessler,* attorneys; *Raymond W. Fisher* and *Denis G. Murphy,* on the briefs).

*David A. Amadio,* argued the cause for respondent.

*Kathleen A. Dunnigan,* submitted a brief on behalf of *amicus curiae,* National Employment Lawyers Association of New Jersey (*Dwyer & Dunnigan,* attorneys; *Ms. Dunnigan* and *Ty Hyderally,* on the brief).

PER CURIAM.

The judgment is affirmed, substantially for the reasons expressed in Judge Axelrad's opinion for the Appellate Division, reported at 354 *N.J.Super.* 467, 808 *A.*2d 128 (2002).

Justice LaVECCHIA, dissenting.

When the Conscientious Employment Protection Act, *N.J.S.A.* 34:19–1 to –8 (CEPA), was signed into law, Governor Kean emphasized the statute's purpose to facilitate the exposure of "illegal activities" of employers. Office of Governor Kean, *News Release* at 1 (Sept. 8, 1986). In pertinent part, CEPA protects a whistle-blowing employee from "retaliatory action" by an employer when that employee "discloses, or threatens to disclose ... an activity, policy or practice of the employer ... that the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law." *N.J.S.A.* 34:19–3a; *see also N.J.S.A.* 34:19–2e (defining "retaliatory action"). In Section 3a, the Legislature carefully sought to balance the rights of both employers and employees on matters that concern the way in which an entity carries out its business. The language of the provision does not suggest an intent to allow a CEPA cause of action for every employee who differs with an employer over the conduct of business on a day-to-day basis within the bounds set by law. The question then is whether plaintiff has alleged a claim that meets the threshold established by the Legislature in CEPA.

The facts adduced at trial may be summarized briefly. After a one-month probationary period, the Board hired plaintiff as a full-

time night custodian in January 1997. Allowing plaintiff the full benefit of his proofs, it appears that during his probation he began noticing problems at the buildings he was assigned to clean. Specifically, he observed that a clogged toilet and a missing light in an exit sign were not remedied for approximately one week. Plaintiff believed that those problems might be safety or health hazards.[1] He apprised his immediate supervisors of his concerns and attempted to speak directly to the Superintendent of Schools. At about the same time, plaintiff's supervisors were criticizing plaintiff's work performance in internal memoranda shared with plaintiff, including that he was "engaging in lengthy personal phone calls while on duty, not arriving on time, [sic] theft of services, and not following the chain of command." *Hernandez v. Montville Township Bd. of Educ.*, 354 *N.J.Super.* 467, 471, 808 *A.*2d 128, 131 (App.Div.2002). On March 18, 2003, the Board terminated plaintiff, citing the unsatisfactory performance citations he had accumulated.

Plaintiff filed this complaint alleging wrongful termination, contending initially that the Board's action violated *N.J.S.A.* 34:19–3a and –3c, respectively.[2] In pre-trial rulings, the trial court effectively dismissed the Section 3c claim from the action and the parties have not disputed that determination.[3] After the jury

---

[1] Plaintiff testified that he had had some OSHA training. "OSHA" refers to the Occupational Safety and Health Administration, a federal administrative agency operating under the authority of the Occupational Safety and Health Act of 1970, 29 *U.S.C.A.* § 651 *et seq.*, and regulations promulgated pursuant thereto by OSHA.

[2] Section 3c prohibits an employer from taking retaliatory action against an employee who "[o]bjects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes ... is in violation of a law, or a rule or regulation promulgated pursuant to law, or ... is incompatible with a clear mandate of public policy concerning public health, safety or welfare or protection of the environment." *N.J.S.A.* 34:19–3c.

[3] The trial court's jury charge and the verdict sheet instructed the jury to consider only plaintiff's Section 3a claim, although the verdict sheet appears to

returned a verdict for plaintiff, the trial court granted the Board's motion for judgment notwithstanding verdict (JNOV), observing that it never should have let the case go to the jury in the first instance. See R. 4:40–2.

The Appellate Division reversed, reinstated the jury's verdict in favor of plaintiff, and remanded the matter for consideration of punitive damages, interest, and attorney's fees. *Hernandez, supra,* 354 *N.J.Super.* at 477, 808 *A.*2d at 134–35. A majority of this Court now affirms. I must respectfully disagree because I believe that the trial court correctly concluded that plaintiff's claim does not state the type of employee complaint that the Legislature ever intended to be cognizable under CEPA.

Section 3a prohibits retaliation against an employee who takes action in respect of "an *activity, policy or practice*" of the employer that the employee reasonably believes is contrary to law, rule, or regulation. *N.J.S.A.* 34:19–3a (emphasis added). Those words derive meaning from their textual association. See *Gilhooley v. County of Union,* 164 *N.J.* 533, 542, 753 *A.*2d 1137, 1142–43 (2000) (noting that meaning of words in statute informed by words that accompany them). In context, the words included in the phrase "activity, policy or practice" connote ongoing, ubiquitous conduct, stitched together by a common directive or purpose, and not idiosyncratic responses to discrete maintenance problems. Plaintiff has not "disclosed" any sort of Board activity, policy, or practice discouraging the unclogging of clogged of toilets or preventing the purchase and distribution of working light bulbs for exit signs. He did not "blow the whistle" on an "activity, policy or practice." Moreover, a Section 3a whistle-blowing employee must disclose "*an* activity, policy or practice *of the employer,*" not merely "*any* activity, policy or practice." *Compare N.J.S.A.* 34:19–3a (emphasis added), *with N.J.S.A.* 34:19–3c (em-

---

have erroneously allowed the jury to take into account transgressions of "public policies," an ambiguous reference to a standard that has relevance only to the alleged Section 3c claim that was no longer in the case.

phasis added); *see generally Higgins v. Pascack Valley Hosp.,* 158 *N.J.* 404, 419, 730 *A.*2d 327, 335 (1999) (remarking on construction to be attributed to Legislature's choice of term "any" in Section 3c, but not 3a, and "omission of the phrase 'of the employer'" in Section 3c). Plaintiff may have observed incidents of lack of diligence on the part of certain maintenance employees when responding to operational problems concerning toilets. However, even if the person or persons did not repair or restore operation of the clogged toilet as quickly as plaintiff believed possible or preferable, that dereliction does not equate to an "activity, policy or practice" "of the employer."

Further, to trigger CEPA protection under Section 3a, an employee must disclose "an activity, policy or practice . . . that the employee reasonably believes *is in violation of a law, or a rule or regulation promulgated pursuant to law."* *N.J.S.A.* 34:19–3a (emphasis added). Much of plaintiff's concern focused on the speed (or alleged lack thereof) with which the Board's employees addressed the maintenance issues he raised, and the Board's purported failure to schedule a meeting with plaintiff in a timely fashion. See *Hernandez, supra,* 354 *N.J.Super.* at 471, 475, 808 *A.*2d at 131, 133 (describing plaintiff's "attempts to bring [his concerns] to the attention of [the Board's] representatives" and "frustrat[ion] with maintenance's lack of response"). However, plaintiff has pointed to no law, regulation, or rule making it illegal for the Board not to address plaintiff's concerns as quickly as he would have liked.

Put simply, plaintiff's criticism of the timeliness of "maintenance's response" to occasional operational problems posed by toilets that clogged or light bulbs that burned out, or his dissatisfaction with the Superintendent's responsiveness to his request for a meeting, do not support a CEPA claim that rendered plaintiff immune from termination due to the Board's dissatisfaction with plaintiff's work performance. In that last respect, I cannot help but note that it was plaintiff's responsibility to clean the restrooms. His complaints about clogged toilets soiling the nearby

floor of the restroom (however distasteful it is to contemplate such a circumstance in a school) is a complaint about a matter that lay within his own area of responsibility.

In summary, although plaintiff's desire for a more prompt response to the specific maintenance problems he encountered may have been admirable, he has failed to plead a cause of action under CEPA. Idiosyncratic responses by other employees to occasional operational problems do not constitute the type of illegal "activity, policy or practice" rendered actionable under *N.J.S.A.* 34:19–3a. We expect our trial courts to be gatekeepers to prevent the expenditure of time and resources on claims that do not raise a cognizable cause of action. The trial court's instincts were correct here. This matter should not have gone to the jury. The grant of JNOV to defendants should not be reversed, and plaintiff should not be allowed to return to the trial court to seek punitive damages, interest, and attorney's fees.

I respectfully dissent.

Chief Justice PORITZ and Justice VERNIERO join in this opinion.

*For affirming*—Justices LONG, ZAZZALI, and ALBIN and Judge CONLEY, temporarily assigned—4.

*For reversing*—Chief Justice PORITZ and Justices VERNIERO, LaVECCHIA—3.