Gary REYNOLDS, Plaintiff,

v.

TCM SWEEPING, INC., Defendant.

Civil Action No. 04–3791(JEI).

United States District Court,
D. New Jersey.

Oct. 12, 2004.

Ross Begelman, Esq., Cherry Hill, NJ, for Plaintiff.

Daniel J. Brennan, Esq., Mount Holly, NJ, for Defendant.

## OPINION

IRENAS, Senior District Judge.

Before this Court is Defendant's Motion to Dismiss pursuant to Federal Rules of Civil Procedure, Rule 12(b)(6).[1] Defendant argues that Plaintiff's state law claim under the Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19–1, et seq., is preempted by § 301 of the federal Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185. Plaintiff argues that the LMRA does not extend to his claims.[2]

For the reasons that follow, the Court holds that § 301 of the LMRA does not preempt Plaintiff's CEPA claim. In light of our decision this matter will be remanded to the New Jersey Superior Court,

---

1. In the alternative, the Defendant requests that the Motion to Dismiss be converted to a Motion for Summary Judgment under Fed. R.Civ.P. 56.

2. This Court could read Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss to include a motion to remand to state court, as this case was removed by Defendant on the grounds that federal labor law properly governed the Complaint.

Burlington County, Law Division, because this Court lacks subject matter jurisdiction over Plaintiff's CEPA claim.

## I. *Background*

The Plaintiff, Gary Reynolds (hereinafter "Plaintiff"), was employed by the Defendant, TCM Sweeping (hereinafter "Defendant"), from June 29, 1999 through August 26, 2003 as a mechanic and operator. (Cmpl. at ¶ 3.) The Plaintiff, along with other employees of the Defendant, were members of, and collectively bargained through, International Union of Operating Engineers, Local 825 (hereinafter "Union"). (Cmpl. at ¶ 3.) The Defendant and the Union were parties to a collective bargaining contract effective from November 1, 2000 through October 31, 2003 (hereinafter "CBA"). Article 5 of the CBA set forth the following condition for wage rates:

> When working on these construction projects and/or Davis Bacon Act prevailing projects, the company agrees to pay in accordance with the Independent I.U.O.E. Local 825 agreement.

(Cmpl. at ¶ 7.)

Prior to March 2003, the Plaintiff was earning $20.84 per hour on Davis Bacon Act[3] jobs and $15.00 per hour for non-rate operator jobs. (P. Brief at 1.) In December 2002, the Plaintiff became aware that the correct wage for Davis Bacon Act jobs was $27.74 per hour. (*Id.*) The Plaintiff complained to his supervisors regarding the wage discrepancy and was subsequent-

ly informed that he would receive the proper rate, which began in March 2003. (*Id.*)

On or about May 23, 2003, twelve employees, including the Plaintiff, signed a grievance seeking back pay they alleged was owed to them under the CBA for the discrepancy in wage rates with respect to Davis Bacon Act jobs. (P. Brief at 2.) However, eleven of the twelve employees who initially signed the grievance withdrew their names, leaving only the signature of the Plaintiff. (*Id.*) The Plaintiff alleges that he witnessed the vice president of the Defendant company, Joseph Glassmire (hereinafter "Glassmire"), practicing a pattern of intimidation and harassment, which led the eleven other employees to withdraw their signatures. (Cmpl. at ¶ 15.)

Plaintiff alleges that his refusal to withdraw the grievance resulted in increasing pressure from Glassmire. (P. Brief at 2.) According to Plaintiff, Glassmire approached him in the company parking lot one evening, handed him a paper, and told him that he needed to sign it. The paper stated that the Plaintiff was removing his name from the grievance. (*Id.*) When the Plaintiff responded with a refusal to sign, Glassmire stated, "What do you mean you can't sign it. Everyone signed off on it and you are the only one." (Cmpl. at ¶ 16.) When the Plaintiff indicated that he was prepared to stand alone, Glassmire

---

**3.** The Davis Bacon Wage Act requires that "[t]he advertised specifications for every contract in excess of $2,000, to which the Federal Government or the District of Columbia is a party, for construction, alteration, or repair, including painting and decorating, of public buildings and public works of the Government or the District of Columbia are located in a State or the District of Columbia and which requires or involves the employment of mechanics or laborers shall contain a provision stating that the minimum wages to be

paid various classes of laborers and mechanics." 40 U.S.C. § 3142(a). "The minimum wages shall be based on the wages the Secretary of Labor determines to be prevailing for the corresponding classes of laborers and mechanics employed on projects of a character similar to the contract work in the civil subdivision of the State in which the work is to be performed, or in the District of Columbia if the work is to be performed there." 40 U.S.C. § 3142(b).

stated, "I guess I am going to have to fire you." (*Id.*)

On August 22, 2003, the Operations Manager for Defendant, Shaun Glassmire, and his sister reportedly each received two telephone calls complaining that trucks belonging to Defendant were speeding on Route 130. Plaintiff belonged to the crew[4] of one of those trucks. (Arbitration Opinion and Award at 3, attached as Exh. B to D. Brief (hereinafter "Award").) The reports complained that the crew members were "barreling down" the road, "drafting" each other and playing "grab ass." (*Id.*)

On August 26, 2003, Todd Richardson ("Richardson") was driving his tractor trailer when he became involved in a confrontation with Defendant's crew members. (Award at 4.) Allegedly, a crash truck, driven by employee Jeremy Wolk ("Wolk") wedged in front of Richardson and permitted Plaintiff to pull in front. (*Id.*) Richardson claimed that when he indicated his displeasure with a hand gesture towards Plaintiff and Wolk, they boxed him in on the freeway while the Plaintiff blasted Richardson's truck with road debris. (Award at 5.) The windshield of Richardson's truck was damaged and he reported the incident to Glassmire, who instructed him to meet another truck operated by Defendant at the next exit and follow it to the Defendant's business location ("the Yard").

Glassmire confronted the employees, including Plaintiff, about the incident when they returned to the Yard. (*Id.*) Although Plaintiff denied damaging the truck, he subsequently approached Richardson at the yard and threatened him with violence. (Award at 5–6.)

The Plaintiff's employment, along with Wolk's, was terminated following the verbal assault on August 26, 2004.[5] (Award at 7; Cmpl. at ¶ 22.)

Pursuant to the CBA, on January 9, 2004, the Plaintiff participated in a binding arbitration before Arbitrator Michael A. Berzansky (hereinafter "Arbitrator").[6] The Plaintiff and the Union were represented by counsel and afforded a full opportunity to present evidence in support of their positions. (Award at 1.) The Arbitrator found that the Plaintiff had engaged in reckless behavior while driving company trucks, which could have resulted in a major accident. (Award at 18.) Furthermore, the Arbitrator found that the Plaintiff's testimony was "less than credible" and that the Defendant " . . . had just cause to discharge him." (Opinion at 18.)

On or about June 17, 2004, the Plaintiff filed a Complaint against the Defendant in the Superior Court of New Jersey, Burlington County, Law Division. Pursuant to 28 U.S.C. § 1441, 28 U.S.C. § 1446, and Federal Rule of Civil Procedure 81(c), on or about August 5, 2004, the Defendant removed the action to the United States District Court of New Jersey, Trenton. The action was later transferred to United States District Court of New Jersey, Cam-

---

**4.** Defendant company performs road work, including the clearing of debris from the shoulders of highways. Due to the inherent dangers of that type of work, the employees of Defendant work in teams wherein large commercial sweepers and dump trucks are protected in the rear by a crash truck. (Award at 3.)

**5.** Neither party, however, has provided the court with a copy of the CBA, or specifically, the arbitration clause of the CBA.

**6.** The Plaintiff's brief omits any mention of the binding arbitration hearing that took place on January 9, 2004, stating only that his termination was a result of retaliation against him for his complaints and objections regarding the wages not paid. (P. Brief in Opposition at 2; D. Motion to Dismiss at 5.)

den. The Defendant now files a Motion to Dismiss the Complaint, under Fed. R.Civ.P. 12(b)(6), or in the alternative, a Motion for Summary Judgment, under Fed.R.Civ.P. 56.

## II. *Discussion*

### A. *Relevant Law*

### 1. State Law: The Conscientious Employee Protection Act ("CEPA")

The Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19–1, et seq., is remedial legislation that protects an employee from employer retaliation in cases where the employee 'blows the whistle' on illegal or unethical activity. *Hernandez v. Montville Twp. Bd. of Educ.*, 354 N.J.Super. 467, 808 A.2d 128 (2002). A successful plaintiff under CEPA must show four elements: (1) He reasonably believed that an activity, policy or practice of defendant, his employer, was in violation of a law, rule or regulation promulgated pursuant to law or was fraudulent or criminal; (2) He objected to or complained about the activity, policy or practice; (3)

Retaliatory action was taken against him (i.e. adverse employment action occurred); and (4) There was a causal link between the plaintiff's action and the retaliatory or adverse action of the defendant employer. *McCullough v. Atlantic City*, 137 F.Supp.2d 557, 573 (D.N.J.2001).

CEPA includes a waiver provision, which provides in part that if an employee chooses to file a claim under CEPA, he may be precluded from obtaining a remedy under a collective bargaining agreement, other contract, other state law, state rule, state regulation or common law. N.J.S.A. 34:19–8.

The waiver provision of CEPA can prevent a former employee from pursuing both a CEPA claim *and* other causes of action for retaliatory discharge [7] under law or under a CBA. *See, e.g., Young v. Schering Corp.*, 141 N.J. 16, 28–29, 660 A.2d 1153, 1159–60 (1995). The waiver provision, however, does not apply until after CEPA claim is "instituted." *Id.* at 29, 660 A.2d at 1160.[8]

---

**7.** The waiver provision will affect only those claims that are for retaliatory discharge, i.e. "only [ ] those causes of action that require a finding of retaliatory conduct that is actionable under CEPA," and will not prevent a plaintiff from seeking a remedy under a cause of action that is "substantially independent of the CEPA claim." *Young*, 141 N.J. at 29, 660 A.2d at 1160.

An illustration of this point is found in *Scouler v. Camden*, 332 N.J.Super. 69, 752 A.2d 828 (2000), in which a career civil service employee wanted to argue his claims of retaliatory conduct in his appeal of a disciplinary action at a civil service disciplinary hearing. Even though the claims he planned to assert at the appeal were the same as the claims he had already made in a complaint filed under CEPA, the Appellate Division found that he could make both, because the "cause of action" at the disciplinary hearing was the allegation that the employee was guilty of misconduct, and not that the employer was engaging in retaliatory conduct. *Id.* at 74–75, 752 A.2d at 831.

**8.** In this case, the Plaintiff sought a remedy under his CBA and then filed a complaint under CEPA. While this Court has found that it lacks the subject matter jurisdiction to hear the CEPA claim, we will note that the waiver in the CEPA statute should not bar a former employee who sought relief under his employment agreement or CBA through filing a grievance or participating in an arbitration from later filing a CEPA claim. *See, e.g., Palladino v. VNA of Southern New Jersey*, 68 F.Supp.2d 455, 470–71 (D.N.J.1999) ("Nothing in that language states that the filing of a federal claim, or any other claim for that matter, implicitly waives the filing of a CEPA claim, and this Court finds that there is no reasonable basis upon which to extend the meaning of this section, beyond what it plainly states.... The unambiguous meaning of the language of N.J.S.A 34:19–8 is that the institution of an action under it constitutes a waiver of other enumerated state law actions, not the reverse.").

2. Federal Law: Section 301 of the Labor Management and Relations Act ("LMRA")

Section 301 of the LMRA provides federal subject matter jurisdiction in cases involving a violation of a contract provision between certain employers and labor organizations. 29 U.S.C. § 185(a). The Supreme Court held that § 301 "also 'authorizes federal courts to fashion a body of federal law for the enforcement of these collective bargaining agreements.'" *Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 403, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988) (citation omitted). Moreover, "in order to ensure uniform interpretation of collective-bargaining agreements," the Court has interpreted § 301 to mandate the preemption of state law when "a state-law claim depends upon the meaning of a collective-bargaining agreement." *Id.* at 404–06, 108 S.Ct. 1877; *see Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 211, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985) (finding that the interest in uniform interpretation required that the definitions of certain contract terms and phrases be subject to interpretation under federal law, and not state law).

The Court has noted, however, that "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law." *Id.* Indeed, "it would be inconsistent with congressional intent under that section to preempt state rules that proscribe conduct, or establish rights and obligations independent of a labor contract." *Id.* at 212, 105 S.Ct. 1904; *see also Lingle,* 486 U.S. at 412, 108 S.Ct. 1877. In determining whether § 301 preempts or not, the Supreme Court directs courts to focus on whether the state "confers nonnegotiable state-law rights on employers or employees independent of any right established by contract, or, instead whether evaluation of the tort [or state law based] claim is inextricably intertwined with consideration of the terms of the labor contract." *Allis–Chalmers,* 471 U.S. at 213, 105 S.Ct. 1904.

■ A state law claim may reference a CBA or employment contract, but will not be preempted on a reference alone; however, if the claim cites to the CBA and substantially depends on its terms, the claim will be preempted. *Livadas v. Bradshaw,* 512 U.S. 107, 124, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994) (noting that "when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished"). Indeed, a labor agreement may even provide helpful information, such as pay rates and benefits, necessary to determine potential damages in cases where the state claim is independent of the CBA. *See, e.g., Lingle,* 486 U.S. at 413 n. 12, 108 S.Ct. 1877.

Even if a plaintiff relies on the same set of factual allegations in asserting a state law claim as he would in asserting a claim under a labor agreement, the state law claim is not necessarily preempted. *Lingle,* 486 U.S. at 408–09, 108 S.Ct. 1877 (noting that "even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes").

■ The key inquiry under the preemption analysis is whether an examination of the complaint requires a factual inquiry into the actions and motivations of the parties relative to rights conferred by state law or relative to the rights of the

parties under the collective bargaining agreement. *See Patterson v. Exxonmobil Corp.*, 262 F.Supp.2d 453, 461–62 (2003); *see also Lingle*, 486 U.S. at 407, 108 S.Ct. 1877.[9] A labor agreement and state law may offer employees protection against the same employer actions, such as retaliatory discharge, but that alone is not indicative of preemption.[10] Indeed, the Supreme Court stated that "the mere fact that a broad contractual protection against discriminatory—or retaliatory discharge may provide a remedy for conduct that coincidentally violates state-law does not make the existence or the contours of the state law violation dependent upon the terms of the private contract," because even if an arbitrator finds that the conduct (i.e. discharge) does not violate the labor agreement (i.e. the just cause provision of a CBA), the arbitrator's decision may not comport "with a proper interpretation of state law." *Id; see also Patterson,* 262 F.Supp.2d at 453 (holding that while some of the alleged retaliatory conduct could have also been found violative of the CBA, the plaintiff's claims were not preempted because they "stem[med] from his entitlement under state law").

## B. *Analysis*

In this case, the right vested in employees under CEPA is significantly independent of any federal interpretation of the CBA. Furthermore, Plaintiff's CEPA claim is not inextricably intertwined with the CBA. Since this Court finds that § 301 does not preempt, it must remand the case to the state court as it lacks subject matter jurisdiction.

In December 2002, Plaintiff realized that he and his co-workers were not being paid the correct wage, in violation of both the CBA and the Davis Bacon Act. Although Defendant corrected the pay scale going forward, no effort was made to make up for past under payments. On May 23, 2003, Plaintiff and twelve other employees signed a grievance seeking back pay owed to them under the CBA with respect to the Davis Bacon Act projects for which they were underpaid. Plaintiff contends that he was later harassed, intimidated and fired because of his efforts to remedy past violations of the Davis Bacon Act and the CBA. Plaintiff concedes that Article 5 of the CBA plays a role under the first prong

---

9. In *Lingle,* the plaintiff claimed that the defendant committed a state law tort of retaliatory discharge because plaintiff had filed a worker's compensation claim. The Illinois tort law in question required two elements: "(1) he was discharged or threatened with discharge and (2) the employer's motive in discharging or threatening to discharge him was to deter him from exercising his rights under the Act or to interfere with his exercise of those rights." *Lingle,* 486 U.S. at 407, 108 S.Ct. 1877 (citation omitted). The U.S. Supreme Court held that "[e]ach of these purely factual questions pertains to the conduct of the employee and the conduct and motivation of the employer. Neither of the elements requires a court to interpret any term of a collective-bargaining agreement." Therefore, the state claim was independent.

10. In some cases, the statutory language of the state law may require a court to look at

the language of the CBA. The result in such cases is that any state claim under that law made by an employee working under a CBA is by definition intertwined with the CBA and therefore preempted. In *Bishop v. Bell Atlantic Corp.*, 81 F.Supp.2d 84 (D.Me.1999), the court found that Maine Whistle blower's Act was preempted by Section 301 because the statutory language provided that the statute would not "diminish or impair the rights" of employees under a CBA. The CEPA, New Jersey's Whistle Blower Statute, contains similar language, but is different in one important respect and therefore is not automatically preempted by Section 301. The District Court in *Patterson* held that because filing a CEPA action waives rights under a CBA, there is no automatic preemption as there was under the Maine statute. *Patterson,* 262 F.Supp.2d at 463.

of the CEPA test,[11] but argues that the retaliatory conduct is the focus of his claim and therefore, an interpretation of the CBA is not required.[12] This Court agrees.

While the CBA may provide some relief for a plaintiff, through the grievance process and arbitration, that alone is not conclusive evidence of preemption. CEPA grants rights independent of the CBA, and the remedies which might be obtained in a successful grievance under a CBA are not necessarily the same as those available under a successful CBA claim.

This Court is only asked to examine Plaintiff's allegations that Defendant retaliated against him through intimidation, harassment and ultimately, with the termination of his employment. This Court is not asked to assess the merit of the Plaintiff's grievance requesting back pay, nor is this Court asked to rely on the CBA in determining whether or not Defendant did in fact retaliate against Plaintiff in violation of CEPA.[13]

CEPA claims, as acknowledge by the court in *Patterson,* require a factual inquiry in applying the four prong test. Like *Patterson,* the first prong may require some a reference to Article 5 of the CBA,

which deals with the proper pay rates and the Davis Bacon Act. However, the Supreme Court has instructed that reference to the CBA alone does not alone intertwine the claim with the CBA. *See Livadas v. Bradshaw,* 512 U.S. 107, 124, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994). While Plaintiff may reference the CBA in articulating his claims, the true essence of his claim does not require an interpretation of the CBA. Indeed, it appears that the Davis Bacon Act would apply even if the CBA between a particular employer and its union made no reference to it.[14]

The second prong of a CEPA claim requires proof that a plaintiff actually performed some whistle blowing activity and the third prong requires proof that there was an adverse employment action. Under these two prongs, Plaintiff's arguments will not depend on the CBA; these claims will pertain only to the conduct of the Plaintiff and the Defendant. In this case, a court will need to examine Plaintiff's claims of intimidation, harassment and retaliatory termination of employment. The CBA does not play a role under these prongs, as Plaintiff is not alleging that Defendant's actions were improper because they violated or conformed with the CBA.[15] Rather, these two prongs call for a

**11.** In Paragraph 7 of the Complaint, Plaintiff cites directly to Article 5 of the CBA, which deals with the pay scale for Davis Bacon construction projects. (P. Cmpl., at 2, ¶ 7.)

**12.** Whether Defendant actually violated the Davis Bacon Act is not the issue. CEPA's first prong only requires that a plaintiff "reasonably believe" that there has been a violation of law. Indeed, neither party suggests that this case involves any dispute as to the meaning of Article 5 or the Davis Bacon Act.

**13.** Because this Court is remanding the case, it will not actually review the merits of Plaintiff's CEPA claim.

**14.** The Defendant, however, contends that the true issue in this case, despite how Plaintiff attempts to frame it, "is that TCM, in terminating his [Plaintiff's] employment, violated

the CBA." (D. Brief, at 7.) Defendant argues that Plaintiff's Complaint really alleges that wages, as provided by the CBA, were not paid, that Plaintiff filed a grievance, pursuant to the CBA, and that Defendant harassed and then fired Plaintiff in retaliation, in violation of the CBA. (D. Brief, at 7–8, 11.) The Court disagrees with Defendants characterizations. Plaintiff is not seeking damages for past wages, nor is it clear that these wages would be an element of damages in his CEPA claim. The outcome of the back-pay grievance which started the problem is not set forth in the papers of either party. Whether Defendant engaged in harassing and intimidating behavior and later fired Plaintiff in retaliation is the true issue in this case.

**15.** *Cf. Medrano v. Excel Corp.,* 985 F.2d 230, 234 (5th Cir.1993) (finding preemption where

factual inquiry into what Plaintiff and Defendant actually did.

The fourth prong requires a plaintiff to show a causal connection between the whistle blowing activity and the adverse employment action. Under this prong the court will examine not only the parties' conduct, but also their motivations. Defendant claims that it had just cause to discharge the Plaintiff; Plaintiff argues that the discharge was in retaliation for filing a grievance and complaining about the alleged violations of federal and state law. The CBA need not be considered under this prong.

Therefore, this Court finds that Plaintiff's CEPA claim is not preempted by § 301.[16]

### III. *Conclusion*

For the reasons set forth above, the Court will deny Defendant's Motion to Dismiss, or in the alternative, for Summary Judgment. Plaintiff's CEPA state law claim is not preempted by § 301 of the LMRA because Plaintiff's claim and the parties' CBA are not inextricably intertwined. Moreover, the court need not interpret the provisions of the CBA in order to address Plaintiff's claims.

This Court finds that removal to federal court was improper and will remand the case to the New Jersey Superior Court, Burlington County, Law Division.[17] Un-

der 28 U.S.C. § 1447(c), attorney fees incurred as a result of the removal are available to Plaintiff. The Court will issue an appropriate Order.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND REMANDING CASE TO STATE COURT

This matter having appeared before the Court upon Defendant's Motion to Dismiss pursuant to Federal Rules of Civil Procedure, Rule 12(b)(6),[1] the Court having considered the submissions of the parties, for the reasons set forth in an opinion issued by this Court, which findings of fact and conclusions of law are incorporated herein by reference, and for good cause appearing,

**IT IS** on this *12TH* day of **October, 2004,**

**ORDERED THAT:**

1. Defendant's Motion to Dismiss Plaintiff's cause of action under the Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19–1, et seq., is **DENIED.**

2. This case is **REMANDED** to the New Jersey Superior Court, Burlington County, Law Division, because this Court

---

the issue of the case was "whether the *provision* [of the CBA] *itself* was illegal or discriminatory").

**16.** This Court also will not address Defendant's contention argued in its Motion to Dismiss that the arbitration award resulting from Plaintiff's grieving of his termination constitutes some form of issue or claim preclusion on his CEPA claim.

**17.** It is immaterial whether this Court interprets Plaintiff's Brief in Opposition as a motion to remand or whether it rules *sua sponte,* because under the Federal Civil Rules of Pro-

cedure, this Court must dismiss an action "[w]henever it appears by suggestion of the parties *or otherwise* that the court lacks jurisdiction of the subject matter." F.R. Civ. P. 12(h)(3) (emphasis added); *see also* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

**1.** In the alternative, the Defendant requests that the Motion to Dismiss be converted to a Motion for Summary Judgment under Fed. R.Civ.P. 56.